Good morning. Before we begin this morning, it struck us as advisable to combine these first two cases. The government's position, I presume, is the same in both. And if we combine them, we could give each of you appellants ten minutes each, and then the government, and then you can come back with five minutes each in your rebuttal. How's that sound? Any objection to that? No? All right, fine. Well, let's start then with the... If I may, I'm assuming the government can then get 20 minutes? Is that right? Yeah. So, for the record, this is 081532 Arctic Slope Native Association for the Department of Health and Human Services and 081607 Confederated Tribes v. Department of Health and Human Services. Mr. Miller, would you like to begin? Thank you. Good morning. May it please the Court. This appeal boils down to a single issue. May the six-year statute of limitations for presenting a claim to a contracting officer ever be told. The Civilian Board of Contract Appeals said no, relying exclusively on the Great Personnel decision from the Armed Services Board. That decision was error for four reasons. First, Great Personnel wasn't a tolling case. Secondly, the stone container decision trumps the approach taken by the Board below. But let me ask you, what is the significance of sand and gravel to this case? No significance at all, Your Honor. Sand and gravel affirmed a decision of this Court which had reached the same conclusion regarding Section 2501 based on a century and a half of precedent regarding that statute. It was considered by this Court when this Court wrote Kirkendall. It had no impact on the Court's analysis in Kirkendall. It simply affirms the proposition that... Well, sand and gravel followed Kirkendall. Am I not correct? Supreme Court decision. Oh, the Supreme Court's decision, of course, affirms Kirkendall. But the key question is, under Irwin, what is the meaning of the statute? Did Congress intend, when we're looking at equitable tolling, putting class action tolling aside, did Congress intend to trump the presumption in favor of equitable tolling? And the Supreme Court said that the indicators of Congress's intent can come from many sources, including a long history of prior decisions from a court interpreting the statute. After all, a court's interpretation of a statute is the meaning of the statute. So we discern the meaning of the statute through the Court's opinions over many years, from Soriano and earlier cases. And that's why the sand case has no impact on the analysis presented here. But sand and gravel held that the statute of limitations, 2501, which I guess is not before us, was jurisdictional. Correct. And the statute that says shall be barred may be held to be jurisdictional. This Court and judges on the Court have divided over the meaning of shall be barred. In Soriano and prior cases, and in this circuit's opinion in sand and the Supreme Court's decision in sand, the Court concluded that the nature of that waiver of sovereign immunity was such that it was jurisdictional and could not be tolled. But class action tolling is different yet. In Stone Container, this Court ruled, and Judge Bryson was on that panel, I believe, that because the federal rules govern tolling against the government, and because the federal rules have the force of a statute, American pipe tolling as a general categorical proposition applies to toll statutes of limitation against the government in class actions, because that is the force of Rule 23. I take it from the broad argument about the equitable tolling available generally under 605 versus the specific narrower argument as to class action tolling, narrower. That's correct. We believe that class action tolling resolves this case, and resolves the case categorically without a weighing of the five factors and the application of the presumption that would apply in the equitable tolling context. Let me ask you this. I take it with respect, and this applies to both cases to the extent that you can speak to the other one, that addressing the class action tolling, or at least reversing on the class action tolling, would obviate the need to address the broader question, correct? Absolutely. Do you know if that would also be true with respect to the various pending cases that are out there? I was a little unclear as to the scope of the classes, such that it was left unclear to me whether there might be some cases that would not be within the scope of the class action. Yes, Your Honor. To the best of my knowledge, that would be true. It would be true, that a resolution on the class action tolling issue would resolve all the cases pending before the Civilian Board of Contract Appeals. Thank you. Since I've interrupted you, let me take you back, if I could, just to the sand and gravel case. It's certainly true, as you say, that the Court emphasized the stare decisis factor several times in the course of its opinion, but there was one passage of the opinion that I thought had somewhat broader potential application, and I wanted to get your take on that. And that is, I guess it's the second paragraph of Part 2 of the opinion, where the Court talks about the distinction between those statutes of limitations which facilitate the administration of claims, limit the scope of governmental waiver, or promise judicial efficiency as opposed to giving notice to the defendant of the existence of a claim, and those the Court characterized as being more absolute than the other category of cases. Why is it that 605 does not fall within the facilitating the administration of claims characterization? Because there is nothing on the face of the statute that suggests that that's what Congress was intending to do, much less the structure of the statute, much less its legislative history. Let's begin backwards, legislative history. At the time of Congress's action in 1994 to add the statute of limitations of six years, Congress said it was clarifying. It was clarifying the statute of limitations. It would be odd for Congress to choose the word clarifying if it was intending to change the entire administrative structure of contract appeals. Why was Congress clarifying? Well, we know that prior to the 1994 enactment, laches was the controlling principle for contract appeals. So you had many litigation in many cases involving laches. Was the length of time such that the government had been prejudiced? Well, it's clear that the statute of limitations, providing a definite statute of limitation, provides a clear rule. Congress clarified the earlier laches law, eliminated the need for any more litigation over laches. That is the administration of claims. That's a way to put the United States on notice of a claim. But administration of claims is exactly the category that the court identified as being among the... No, I misspoke, Your Honor. Okay. Each case involving laches, each case in the laches analysis requires a separate analysis by the court, a weighing of the interests of the plaintiff and the defendant. What caused the plaintiff to wait so long? Is the defendant prejudiced by the failure of the plaintiff to file earlier? That's this case-specific problem that's produced by laches. The enactment of a six-year rule eliminates this case-specific, improves the case-specific process, makes the case-specific process easier because everyone can point to a six-year rule, six years from the date of accrual, and know that that's the deadline that applies. Now, this court has never applied the Irwin presumption to toll a first-level statute of limitation. In fact, in Kirkendall, in the court's opinion in Kirkendall, although there were several opinions across the court, everybody agreed from Judge Mayer to Judge Dyke and in between that the first statute of limitation involved in Kirkendall, the first one, which reads very similarly to this one, was subject to tolling. In fact, the government conceded that the first one was subject to tolling. It was only the timing of review issue that caused the division among the court as well as the shall-be-barred type of mandatory language that was in that second statute of limitation. So if we take Sand to mean what it says, and in the passage Your Honor quoted, Sand cites to Brockamp, so we know that the court was thinking about the Brockamp factors, the equitable tolling presumption, and the five factors, then we must conclude that Sand reaffirms the Brockamp analysis, endorses this court's approach in Kirkendall, although I won't say with specific regard to that statute, but the court's general approach, and under that analysis we must win under Irwin because this is a plain vanilla statute, and with regard to that I'd like to compare, Your Honor, the statute right after it, 605B. 605A, if we're familiar, is a simple statute and it says each claim shall be submitted within six years after approval. Okay, plain vanilla statute of limitation, 605B. It doesn't say any claim later than that shall be barred, but shall be submitted. Absolutely correct, Your Honor. Whereas 605B says a contracting officer's decision shall be final and conclusive and not subject to review or suit unless an appeal or suit is timely commenced. I mean, 605B, which has been interpreted by this court and Cosmic in other cases as providing a non-tollable statute of limitation, is the creature we would expect to see if we're looking for a statute where Congress has overcome the presumption in favor of equitable tolling, but you don't see that in 605A. Do you think there's really a principled basis for, and I'm really, I'm not trying to challenge your position here so much as trying to figure out what the Supreme Court is trying to tell us to do. Do you think there's a principled basis for characterizing the sweep of John D'Arsene and Gravel as the court characterized the rule, other than to say that it involved an old statute that had been construed for 100 years in a particular way? Your Honor, I've struggled with that myself, and I think that the Second Circuit and the Diaz opinion, which came out shortly after Sand and Gravel, about got it right. It understood that the Supreme Court set forth this analysis, but very quickly turned to a discussion of a long line of cases, more recently with Soriano and the doctrine of stare decisis, which has come up since then in other cases. And I think the best way to understand Sand and Gravel is based on stare decisis. That said, I would not venture to say that if we were writing, if they were writing on a clean slate, they would not have reached the same conclusion. They might well have reached the same conclusion. After all, many judges on this court believe that a time review provision combined with a shall be barred clause means that you have overcome the Irwin presumption that equitable tolling is barred. So the court may well, in that analysis, have reached the same conclusion. But the court didn't have to go there. Instead, the court made its conclusion based on the interest of stare decisis. Okay. Well, let's hear from Mr. Stormer now. Thank you, Your Honor. Good morning, Your Honor. I'd like to follow up a little bit on the points that were just discussed, if I might, with a slightly different angle. One of the aspects of the Civilian Board of Contract Appeals decision that we believe is incorrect is its reliance on the grade personnel case. The way the analytical framework that was used in grade personnel works is that you first have to find what a claim is to figure out whether or not the claim was submitted properly in accordance with the statute. And in grade personnel, the Armed Services Board of Contract Appeals look to the federal acquisition regulations to help define the term claim because it's not defined in the Contract Disputes Act itself. We don't think that's the correct analysis in this case. We're dealing with the Indian Self-Determination Education Assistance Act, which is a unique remedial statute and contracting statute, as the United States Supreme Court made clear in Cherokee and as this Court made clear in Cherokee as well. And we think that the CBCA erred in not looking at the applicable regulations that were promulgated by the Department of Health and Human Services implementing the Contract Disputes Act cross-reference that's in the Indian Self-Determination Act. And if you look at those regulations, it's clear that the only thing that is needed for a claim to be present and to be submitted is that it has to be in writing, submitted to a contracting officer, and the contracting officer has to issue a decision. There's nothing in the regulations that say anything about any timeliness provision or that cross-references the six-year provision in the Contract Disputes Act. But the statute does incorporate 605, right? The statute does. And what does that say to you with respect to the provision of the statute of the CDA that has the six-year requirement in it? That tells me that it's a claim processing rule, a timing provision that applies to the processing of the claim. But it does apply to the processing of the claim. It does apply, but in terms of how the Department itself has interpreted the rule and the statute, then the analysis that grade personnel itself used is that you rely on the regulations to help define what a claim is. And here there's no question that both Coos, Metcalfe, as well as Asna submitted claims that satisfied the definition of the Indian Self-Determination Act. If this case had been brought instead before the Board in the Court of Federal Claims, would you be making the same arguments here? I think I would be, yes, Your Honor. And how would SANS then affect this? Then you'd be interpreting 2501, which was before the court in sand and gravel. In other words, you've got two parallel avenues here, and then you choose one or the other. Why should the result be different depending on which one you choose? Well, the statute was intended to be remedial and give tribes options. And choosing the CBCA as the forum or Federal District Court or the Court of Claims are all options that tribes could choose. And the implications of choosing each one of those options may be different. It is... That's a fair answer, you wouldn't think. All right. I'm sorry, Your Honor? I'll wrestle with it. One of the other points that was raised in the comments with Mr. Miller had to do with how the SANS court sought to distinguish between the different types of statute limitations. I think it was one of your questions, Judge Bryson. And I think one other point that could be added to what Mr. Miller said is that the court illustrated in SANS, through three different cases, the types of statutes that would be jurisdictional. Two of them dealt with the IRS, very complicated technical statutes. And one of them, the Bailey case, dealt with an appeal rule. And all three of those cases are quite distinguishable factually from the type of statute that we're dealing with here, which Mr. Miller did when he spoke specifically about the terms. So I think the illustrations that the court itself provided in SANS of the types of statute limitations that should be read more conclusively in a jurisdictional sense illustrate the point that the provisions of 605A really don't fall within the category of statutes that I think the Supreme Court was talking about in that part of the SANS decision. Why is that? Because it didn't talk about 605A? Or because Supreme Court decisions should be interpreted in light of the statutes that they're interpreting? 2501 only? I think that's correct, Your Honor. They should be interpreted.  It provides some parameters for other courts to evaluate same kinds of issues based on analysis of different types of statutes. Now, you're not arguing stone container. You're not saying stone container, which deals with class actions, survives sand and gravel, which didn't. We believe that stone container does survive. That's legal tolling. Sand and gravel, in our view, is really focused on equitable tolling principles. Legal tolling is an entirely different animal. It is statutory. But isn't the difference here, aside from 605, class action? That is a difference, yes, Your Honor. And as you're interchanged with Mr. Miller indicated earlier, our view is the same, which is that if legal tolling applies under Rule 23, then there's no need to get into the equitable tolling analysis because it would answer the question across the board for not only our cases but all the other pending cases. So, in summary, our view is that the timing provision in 605A, the placement of the timing provision in 605A, does not, in of itself, make that a part of the presentment of claims requirement of that statute. And we think that the CBCA got that wrong. We think it is more in line with an affirmative defense, just like Latches, which is the theory that was in place before 1994, which, in fact, was also addressed in the Coos and Metlacatla cases. And that's one of the distinguishing facts between the Coos and Metlacatla and ASNA case. The Court ruled that it was reasonable, under the doctrine of Latches, for Coos and Metlacatla to rely on the pending certification process as one basis not to file a claim within the six-year timeframe that the government argued should apply. In fact, they filed it close to nine years after, but the CBCA was convinced that it was reasonable for the plaintiffs to wait while this litigation unfolded on the certification process, and rejected the defense of Latches. Similar to the defense of Latches, we think that noncompliance with the six years that's in 605A should be treated as an affirmative defense. The Gray Personnel case explicitly cited to another Armed Services Board of Contract Appeals case, the Woodside case, in which the Armed Services Contract of Appeals ruled exactly that. The Gray Personnel decision treated it as dicta, but we think that the Woodside case got it right, and that's the correct conclusion. If, in fact, it's treated as an affirmative defense, then the tolling rules would apply. First, the legal tolling rule, and then, if that would not apply, then the equitable tolling rule as an alternative. I do want to point out, in terms of the legal tolling rule, that the government has asserted in its response that the legal tolling rule should not apply to these cases for a couple of reasons. One of them is that the legal tolling rule is judge-made law, which is categorically incorrect. The cases have made it clear that it is, in fact, statutory law, and so that assertion is not correct. The other assertion that the government has made is that coups in Metcalfe were not part of the putative class of the Cherokee class action, and that's incorrect as well. The Civilian Board of Contract Appeals, in its decision, specifically found that they were members of the putative class, and the government didn't object to that finding. All right. Thank you. Mr. Chandler. May it please the Court. The CBCA, in this case, correctly found that the presentment limitation in 41 U.S.C. section 605 is jurisdictional and not subject to tolling, either equitable tolling or class action tolling. Moreover, even if class action tolling applies to section 605, none of the three appellants in these cases can assert the class action tolling rule as a matter of law. We therefore respectfully request that the Court affirm the judgment of the CBCA. The Supreme Court's decision in John R. Sand and Gravel demonstrated precisely why the presentment limitation is jurisdictional. What the Supreme Court said in John R. Sand is that Kendall, Finn, and Soriano are still good law insofar as they relate to the temporal jurisdiction of the Court of Federal Claims. In those cases, the Supreme Court expressed that Congress had expressed its intention to limit the jurisdiction of the Court of Federal Claims to claims that were initiated within six years of their accrual. Of course, as is obvious, this isn't a Court of Federal Claims field. And Sand and Gravel didn't involve a class action. Certainly. Those are both distinctions. But the Court's decision in this case has implications for the Court of Federal Claims jurisdiction. There's no question about that. And if the Court were to apply tolling to the presentment limitation, it would unquestionably expand the jurisdiction of the Court of Federal Claims beyond those six years. And not only beyond those six years in a narrow sense, but there would be an unlimited time expansion. And it also would apply to a very sizable class of cases before that Court. So effectively, if 605 can be tolled, then there is no outer temporal jurisdiction for the Court of Federal Claims. Now, one of the opponents argues that, in essence, we're already there. You mean because the typical CDA case can be appealed either to the board, if you go from the contracting officer, either to the board or to the Court of Federal Claims? Is that why you're saying that the six years? That's correct. That was true in all CDA cases between the enactment of the CDA in 1994, right? Because there was no – Before 605 was passed, that's right, and 605 was designed. There was no expansion period. That's right. So that wouldn't come as a huge shock, right? Well, I think that's exactly what 605 was designed to do. I think it was an oversight by Congress not to have put a cap on the amount of time. And basically, it was an oversight by Congress to create this sort of backdoor exception to the time limitation for the Court of Federal Claims. And it closed that loophole in Section 605 or in the 1994 amendments to Section 605. But that leaves us with the question of by how much it closed it. One of the things that I was wondering about is, of course, the Supreme Court in the Sand and Gravel case. He's dealing with a statute that was enacted in the 19th century and has been construed several times in the 19th century. Soriano was 1945 or 1946, I guess. Here we're dealing with a statute that was enacted in 1994, significantly, perhaps, after the decision of the Supreme Court in Irwin. Does that give us some guidance as to what Congress may have had in mind when it enacted this statute and didn't put in any firmer language that sometimes appears in these limitation statutes about the extent to which a case not filed within the time period shall be barred? Well, I think given that Kendall, Finn, and Soriano were out there, Congress could have assumed that its expression of the temporal limit on the jurisdiction of the Court of Federal Claims was known. But Irwin was out there, too. And Irwin, in fact, certainly Justice White thought that Irwin had overruled Soriano. Now, so did we, by the way, in Stone Container. But you would have thought that with Irwin sitting there, having been decided simply four years before the enactment of the amendment to 605, that there would have been at least hypothetically some awareness that this wasn't necessarily going to be construed the same way as Kendall, Finn, and Soriano construed 2501, don't you think? Well, I think Congress expressed its intent in other ways. First of all, in putting the limitation in Section 605, which this Court had repeatedly held to be jurisdictional, I think obviously Congress knew about that or would have known about that at the time it adopted the presentment limitation. Moreover, it put the six-year limitation in the same provision that gives authority to the contracting officer to decide these cases at all. That also must be viewed as an expression of Congress's intent in this context. And then, of course, there are sort of the typical Brockamp-slash-Kirkendall expressions of Congress's intent as well. There's an exception in the statute that doesn't apply to contractors. It only applies in favor of the government. Now, I know that Asna argues that that's an indication. The fact that there's only one limitation and it runs in favor of the government is an indication that Congress didn't consider exceptions relative to contractors. But that simply isn't a reasonable way of looking at that. And, in fact, the fact that Congress adopted one limitation and had it—or, I'm sorry, one exception and only allowed it to run in favor of the government is actually more strongly suggestive of the possibility that Congress didn't want contractors to be able to avail themselves of exceptions in this context. What does American pipe and construction tell us? Didn't it hold that Rule 23, at least of the Court of International Trade, but it's a class action statute, stops—tones the statute? Why doesn't—why isn't the running of the statute told here during the pendency of the Rule 23 motion? Well, this is a jurisdictional statute, and that has two important implications under American pipe specifically. First, American pipe is—it proceeds from the assumption that statutes of limitation are about protecting defendants from stale claims. That's not the case when you're talking about a jurisdictional statute. And, in fact, the Court made that clear in John R. Sand, that jurisdictional statutes are about something other than that assumption that the American pipe Court made about statutes. They're about the broader system-related goals that the John R. Sand Court discussed. So that premise doesn't apply in the context of jurisdictional statutes. Moreover, the American pipe Court discussed whether or not federal courts even had authority to expand statutes of limitation at all. And the conclusion the Court reached was that it does, insofar as it doesn't—that the tolling of the statute is not inconsistent with Congress's purpose. It's not inconsistent with legislative purposes, the way they put it in the opinion. In the context of a jurisdictional statute, where if the Court has found that it's jurisdictional, the Court will have concluded that Congress intended not to permit tolling. In that context, tolling does run directly contrary to the legislative purpose. Did statute—the CIT statute—did the Supreme Court in American pipe hold that the CIT statute was jurisdictional? The CIT statute? Yeah, because that would weaken your argument. I'm not sure I follow. The Supreme Court in American pipe wasn't considering the CIT statute. Are you thinking of Stone Container, Your Honor? American pipe and construction, according to the board below, held that Rule 23 of the CIT stops the statute of limitations. And you said that doesn't work if the statute of limitations is jurisdictional. And I'm asking whether the CIT statute was jurisdictional. Oh, no, that's right. The CIT statute was not jurisdictional. The Stone Container Court, in considering the CIT statute, never once suggested that it was jurisdictional. What made it not jurisdictional? Well, the Court didn't consider it. That doesn't mean it wasn't. No, that's right. But at least whether or not it was jurisdictional was not an issue taken up by the Court. So we really can't say anything definitive about how the Stone Container Court would have decided. Does sand and gravel at all reconcile its decision with American pipe? I guess if what you're asking is are they reconcilable, yes, they are. But that's apparently your distinction rather than the Supreme Court's. The Supreme Court said statute of limitation is jurisdictional in sand and gravel, but apparently said in American pipe that the statute is told during class action proceedings. That's right. But again, the Court of American pipe wasn't considering a jurisdictional statute. The analysis would have been drastically different if for no other reason, as the Court points out. I mean, the fact that a statute is jurisdictional has implications both for sovereign immunity and judicial authority. So you can't apply the non-jurisdictional cases to a circumstance where the statute is jurisdictional for that reason. But your position, I take it, to summarize and tell me if this is not a fair summary, is that when you're dealing with a jurisdictional statute as you define it here, then the Rule 23 tolling never applies, regardless of how clear it was that Congress may have intended that Rule 23 provide a tolling mechanism in the case of non-jurisdictional limitations. That's right. Class action tolling does not apply to jurisdictional statutes. Even though both, by hypothesis, both the jurisdictional limitation and the class action mechanism are statutory? That's right. And it primarily relates to the fact that when you're talking about jurisdictional statute, you also have to consider sovereign immunity implications of that and also judicial authority. And to come back again to Irwin, Irwin was a waiver of sovereign immunity, correct? Well, I believe the Court said in that case that essentially all statutes of limitation are waivers of sovereign immunity. Well, all statute of limitations that apply to the government. That's right. I'm sorry. All statutes that apply to the government. That's what's so important about Irwin, it seems to me. Irwin is saying that the waiver of sovereign immunity incorporates tolling in certain appropriate situations. So we cross over, it seems to me, in Irwin a very major jurisprudential barrier where we no longer say that six years means six years. That was the scope of the waiver. What we say is six years plus applicable tolling provisions is what the scope of the waiver is. If you accept that, and we're obliged to accept it, why isn't the applicable tolling provision here, Rule 23, just as the applicable tolling provision in Irwin was the judge-made equitable tolling principle, which the Court found to be incorporated within the waiver of sovereign immunity? Because as the Court explained to John R. Sand, and obviously with the background that limitations running in favor of the government are generally limitations on the waiver of sovereign immunity, the John R. Sand Court said that there are some instances where Congress has expressed an intent or has intended to limit the waiver of sovereign immunity, and it's given jurisdictional force under those circumstances. That's one of the three categories that the John R. Sand Court identified as the types of statutes that are jurisdictional and not subject to tolling. So what's left of Irwin, in your view, after John R. Sand? What would you say is the scope of Irwin? You're giving a pretty broad characterization of John R. Sand in Gravel. What's left of Irwin after that, if that characterization is correct? Well, I think both John R. Sand and Bowles demonstrate that there are some outer limits to the Irwin document. Not all statutes are going to be considered under the Irwin analysis, but the Supreme Court really had already said that in Brockamp, and in a sense what we're suggesting is really nothing more than a particular application of Brockamp in that ultimately you're looking at what Congress's intent was, and if the Court determines that Congress's intent was not to permit tolling, as defined through Brockamp in this Court's decision in Kirkendall, then the statute is not tollable. It's jurisdictional. So whatever survives of Irwin is precisely what was left after Brockamp. So you think that John R. Sand in Gravel does not change the rule, at least insofar as the rule was established as of the time of Brockamp? That's right. It essentially is a particular application of Brockamp, and so to the extent that Irwin is narrowed in some sense by there being another statute that is jurisdictional and not subject to tolling, then it was narrowed in that way. But again, the John R. Sand decision is within the confines of Brockamp, and therefore if there's any narrowing of Irwin in that context, it's minor. There are a number of other statements by the Supreme Court that indicate that jurisdictional statutes are not subject to class-action tolling. I should point out first that at least three lower court decisions have held that much. Also, the Supreme Court's decision in Crown Court considers the question of whether or not the Title VII limitation is jurisdictional and not subject to class-action tolling. And that was the argument raised by the Petitioner in Crown Court, and the Court rejected that argument, not because class-action tolling applies to jurisdictional statutes, but because the statute wasn't jurisdictional, as ultimately what the Court held. In looking at the language of Kendall, Finn, and Soriano as well, the language in those three cases definitely goes beyond limiting the decision in John R. Sand or the concept of there being a jurisdictional statute to equitable tolling. Those cases speak in very strong language. In Kendall, the Court talked about the judiciary not having the authority to engraft additional exceptions. In Finn, the Court said that subject to the enumerated exceptions in the statute, a claim, quote, must be put in suit within six years. In Soriano, the Court talked about the exceptions and said there are, quote, no others. It also said that exceptions thereto are not to be implied, and that when Congress provided a time period during which it was going to make the government amenable to suit, the Soriano Court said that Congress was entitled to assume that it meant that period and no more. So the language in some of the other cases is far broader than appellants suggest. Moreover, while it's true that the Court in John R. Sand talked about equitable considerations, there is some language to balance that out. There are a few instances where the John R. Sand Court talks in slightly more absolute terms. But more importantly, there's no indication that the John R. Sand Court intended to draw a distinction between equitable tolling and legal tolling. In fact, the Supreme Court has never talked about there being two types of tolling, there being an equitable and legal-type tolling. And so it's not likely that the Court would have even recognized a need to address that issue. And in fact, in Irwin, when the Court was explaining that the Title VII statute was subject to equitable tolling, it cited Crown Court, which, of course, is one of the seminal cases relating to class-action tolling. I think it's far more likely that when the Court used the phrase equitable considerations in John R. Sand, it was attempting to expand the concept beyond tolling and not to narrow the concept to equitable doctrines. Moreover, in the context of a mandatory presentment requirement, American Pipe and Crown Court really don't extend to that circumstance. American Pipe and Crown Court are about judicial efficiency. And where you have a mandatory presentment requirement, presentment is going to have to happen at some point anyway. Even if the class is certified or if the class is decertified, it doesn't matter. At some point, a plaintiff is going to have to assert or make their administrative presentment. And so it actually has the opposite effect if the administrative presentment requirement can be tolled, because that would prevent the court in which the class action is pending from having jurisdiction over those plaintiffs until after they administratively present. So if a plaintiff were to wait until denial of certification, all that does is delay the consequent litigation. There are no efficiency purposes. It doesn't, as the American Pipe and Crown Court courts put it, there is no avoidance of the needless multiplicity of litigation, because ultimately administrative presentment has to happen. And indeed, that's another basis on which Stone-Container is distinguishable. Stone-Container didn't consider an administrative presentment requirement. Now, Matlakotla and Coos argue, or they point to several cases in which administrative presentment requirements have been tolled. But I would point out that none of those cases involve jurisdictional statutes. And in fact, in the Sharpe, Griffin, and McDonald cases, the court made a point of noting that fact. Actually, the decisions in those cases turned on that fact. They first considered whether it was jurisdictional, and then they concluded that it was not. Let me see if I understand your point about the class action court not having jurisdiction over a party that had not made a timely presentment of the claim. Are you saying that the class action, suppose the class action had been certified, and the court had gone to judgment and ruled with respect to the entire class that there was no cause of action, there would be no right to recovery. Are you saying that would not be res judicata as to those plaintiffs' class members who had not already filed a presentment? Timely? Right. Well, if that were to happen, they could still present their claim to the contracting officer. I think it's very unlikely. But wouldn't the government be in here arguing that it was res judicata? I think that's probably right. But then the court would have had jurisdiction over them in order for it to be res judicata. Right. But by the time it got to court, it was— No, they hadn't made their presentment, in my hypothetical. They hadn't made their presentment. So the court says it was certified, and the same day the court enters an order saying you lose. I mean, it strikes me that you're making an argument that you probably wouldn't want to be making if you won the class action. I think the—I mean, eventually the presentment would have to be made, and it would have to go to court. And at that point, the court would have jurisdiction. And so I think the court could apply res judicata under those circumstances. Because ultimately, the plaintiff has to come within the jurisdiction of the court, one way or another. But if the first—my point is if the class action court did not have jurisdiction over parties that had not made a presentment, it wouldn't matter what the class action court said with respect to those parties. Right? They'd get to relitigate that issue. It may well be that those parties wouldn't be bound to the decision of the class action court. Another distinguishing factor between the cases cited by the appellants, the proposition that administrative exhaustion requirements can be subject to class action tolling, is that none of those cases considered the loss in efficiency that I discussed a moment ago. And the reason for that likely is that the loss of efficiency comes from the fact that the administrative presentment requirement is a mandatory requirement. In the cases cited by appellants, most of those cases, I think all but one, involve Title VII, where the administrative charge requirement can be excused under some circumstances. So it's not necessarily mandatory in that context. Whereas Section 605 very clearly is a mandatory presentment requirement. This court has never held, and in fact, this court has never held that the presentment requirement in Section 605 can be excused under any circumstances and, as a matter of fact, has issued very strong language saying quite the opposite. One of the appellants also argues that, and I'm going back to the jurisdictional issue, One of the appellants argues that essentially the circumstance that I described, where the temporal jurisdiction of the Court of Federal Claims would be expanded through tolling, they essentially argued that we're already there. And the fact that a contracting officer can consider a claim that has been filed right at the end of 60 years, and then the claimant would get whatever the decision, the amount of decision time is, plus one year to file the Court of Federal Claims, essentially has already undermined Section 2501. But the important thing is that Congress, in adopting the presentment limitation, maintained the most critical aspect of Section 2501, which is that claims must be initiated within six years. And in fact, there's a historical basis for that. In Finn, the Court talks about the fact that 2501's predecessor stopped running upon administrative presentment to the relevant agency. So this is a historical basis, a historical part of the Court of Federal Claims jurisdiction. Moreover, there's a very practical reason for that. Clearly, the Court was balancing the six-year limitation period against its desire to provide for administrative presentment. So what you have is you have Congress establishing an immutable six-year jurisdiction for the Court of Federal Claims, creating a narrow exception that is both consistent with the history of the jurisdiction of the Court of Federal Claims and is designed to fulfill a specific desire that Congress had to permit administrative presentment. That simply can't be read to suggest that Congress intended to allow tolling before the Court of Federal Claims. Going back to Kierkegaard and Brockamp and that analysis, there are a number of reasons following Brockamp and Kierkegaard that the statute is jurisdictional as well. First, there's an explicit exception. We addressed that.  What's the explicit exception? Shall be submitted? No, the explicit exception is that the presentment limitation accepts fraud claims by the government. Fraud claims by the government don't have to be submitted within six years. And so as the Court identified in Brockamp, that's an indication that Congress didn't intend other exceptions. The Court also should take into account the relationship, well, other factors that relate to Section 2501 and 2401, given the unique relationship between those three statutes. And I'll address the relationship in just a moment. But I do want to point out that looking at those three statutes together, you have a repetition of the six-year limit. Section 2501 and 2401 have both been held to be jurisdictional and non-tollable. And there are other exceptions in Section 2401 that don't apply in the context of Section 605. Now, the appellants argue that 605, 2501, and 2401 are not interrelated in the way that we described. But the presentment limitation very clearly is an exception to both 2501 and 2401. And in fact, in 2401, Congress explicitly noted that. Congress explicitly made the CDA timing provisions an exception to 2401. Moreover, the presentment limitation and Section 2501 both relate to the jurisdiction of the Court of Federal Claims. And all three of the statutes looked at more generally established the outer limits for claims against the government. Lest there be any doubt about whether or not these statutes are related, I should point out that in briefing this matter before the Board, before John R. Sam was decided, Mettler-Cotler wrote in its brief that Congress, quote, drafted the CDA limitation in Section 605 in 1994 to echo Section 2501, and that Congress used as a reference point 2501 when it enacted the six-year limitation in Section 605A. Thus, by analogy, if Section 2501 can be told, then the nearly identical Section 605 should also qualify. To return, if we could, to Stone-Container, remind me why it is that you don't think 1581I is jurisdictional in the same sense that 605A is. Well, I certainly can't say definitively that that statute is non-jurisdictional. But the point is that the Court— Don't you have to in order to be—I mean, since what Stone held was that that was tollable. Well, certainly the Court didn't treat it as though it was jurisdictional. The Court just never— No, we thought it treated as if it weren't jurisdictional, at least as you— in other words, your universe does not allow, it seems to me, I think we had this exchange before, your universe does not allow a statute of limitations that is jurisdictional to be told by Rule 23, whether in Rule 23 of the federal rules or Rule 23 of the CIT rules, right? That's right. Right. So if that's true, then 1581I must be non-jurisdictional because Stone-Container held to the contrary, right? That's correct. Right. So what about 1581I makes it non-jurisdictional while 605A is? Because it looks pretty similar, if anything, a little bit more rigid, so to speak. It says, shall be barred. Right. I don't know that you necessarily have to conclude that 1581 is not jurisdictional. The point is that the Stone-Container Court didn't give it jurisdictional effect, and that likely is because of the confused state of the law that existed at the time. I mean, the Court actually says, it talks about how the Supreme Court's decisions, starting with Irwin, really aren't very clear on that subject. You're saying that Stone-Container is brought into question by John R. Sand and Gravel. Stone-Container cannot be applied to jurisdictional statutes, certainly after John R. Sand. Now, it may still be a good law in the context of non-jurisdictional statutes. But you're not going to tell us whether you think 1581I is a jurisdictional or non-jurisdictional statute. Again, ultimately, I don't think it really matters, because the Court didn't treat it as though it were jurisdictional. Let me put it this way. If the statute were jurisdictional, the Court would have had to undertake a very different analysis, because then it would have had to grapple with the sovereign immunity type questions and the judicial authority questions that are commensurate with a jurisdictional statute. All right. Thank you. Thank you, Your Honor. The application of Rule 23, pursuant to Stone-Container, does not expand a court's jurisdiction because the Supreme Court said so. The Supreme Court said so in American Pipe in Part 3 of its opinion. The Supreme Court allowed Rule 23 class actions to be brought in Califano v. Yamasaki, a Social Security case, against challenges by the respondents or the losers in both of those cases, that by applying Rule 23, you'd be expanding the jurisdiction of the Court. The Supreme Court rejected that proposition, and that's why this Circuit's decision, the law of the Circuit in Stone-Container, is unchanged by sand. The rules apply to the government because they have the force of law. They are a statute. Now, although we must apply both the rules as statutory law and 605A, it is possible, of course, for Congress to act otherwise. But we have two presumptions. One is we presume that the rules apply fully unless there is a direct expression to the contrary from Congress. The Walsh case from the D.C. Court lays out that law well. There must be a direct expression, and we have such expressions. The Fair Labor Standards Act, the Age Discrimination and Employment Act, both of those acts say, no, we're not going to do Rule 23 class actions in the usual way. We're going to have opt-in classes, and Congress can do that. Congress can change the rules of the game because, after all, the rules are but another statute which Congress can change. But the presumption is that the rules apply unless Congress speaks clearly to something under the rules and makes a different rule. The same is true of equitable tolling. There is a presumption that equitable tolling applies unless there is something from Congress that overrides that, something explicit. And here again the presumption from Young is that Congress is aware of the Irwin presumption, which the Supreme Court in Young called Hornbook Law, the Irwin presumption. So if we presume that Congress is aware of Hornbook Law, of Irwin tolling, you would expect that Congress, writing in 1994, wouldn't hide the fact that it was trumping the tolling rule, but would come right out and say it. And it would put the six-year rule somewhere else, in 606 or in 607. In fact, speaking of 607, if the issue before us, seemed to be before the Board, is conceptually what is the Board's jurisdiction, 607d tells us what the Board's jurisdiction is. Actually, in 607d, Congress spoke explicitly, and it said, the Civilian Board shall have jurisdiction to decide any appeal from a decision of a contracting officer. Okay, so what's jurisdictional is a decision from a contracting officer. Congress told us what is and isn't jurisdictional, and it's a decision from a contracting officer that triggers the jurisdiction of the Civilian Board. Now, to the issue about sand and its effect on other cases. Stone survived sand for multiple reasons. First of all, sand involved 2501. Stone did not involve 2501, as the dialogue with Judge Bryson just indicated. Secondly, stone involves Rule 23. Sand did not involve Rule 23. Throughout the Court's opinion, in all of the cited cases, the Court is talking in sand about cases where the Court was called upon to answer this question, is there equitable tolling or not? And sometimes the Court said yes, and sometimes the Court said no. They were all equitable tolling cases. Nowhere is class action tolling cited in sand because it doesn't make sense conceptually. It's not what that case is about. Congress's intent is the touchstone, and we have to go back, begin and end with the Contract Disputes Act, and there is no indication in Congress's addition, this clarification at the end, that it intended to trump the rules of tolling. May I have one extra moment? Well, I think we can hear from your colleague. Afterward term? No, your time's expired. Thank you. Your time's expired. Thank you. Mr. Strover? I'd like to start by responding to a question that you asked, which I did not respond to adequately earlier. You asked if there would be a different argument that would occur if a plaintiff were to file a suit directly in the Court of Claims, and if that would implicate 2501. And I think the answer is no, because in order to file in the Court of Claims, you'd still need a contracting officer's decision, which would be achieved through 605. And then 609 is the timing provision which would apply, the jurisdictional provision which applies and gives the Court of Claims jurisdiction. So 2501 would not be implicated. So I wanted to address that quickly. Government's counsel has talked quite a bit about administrative... So you're saying a suit filed in the Court of Federal Claims would not be governed by 2501? I think it would be governed by... Because it would be governed by the CDA? That's the way I would interpret it, Your Honor, under 609. That's correct. The government has spoken at length about administrative presentment concepts and argues that the same salutary benefits that class action tolling provides under Rule 23 would not be available if these administrative presentment requirements are not satisfied. But that really isn't the case. And if anything, these cases that we're talking to you about today are reflective of how the salutary effect works in the administrative setting. The Cherokee case was filed, and many tribes around the country, over 200, had similar types of claims, and very few of them decided to litigate those claims separately. They watched the Cherokee class certification process and then made a decision at the end of that certification process about whether or not their claims warranted filing suit individually and spending the time, money, and energy in order to litigate them. If, in fact, the government's position that they're proposing is accepted today, a very different landscape would, in fact, be present. Hundreds of tribes would have filed what would have amounted to potentially thousands of claims because each tribe has potentially up to 10, 15 years' worth of claims. And contracting officers would have been inundated with claims. Decisions would have been issued or not issued, as the case might be. But if they had been issued, then that would have triggered the different timing provisions under 606 and 609, and tribes would have been in a position where they would have had to litigate their claims individually regardless of what was happening in the Cherokee class action case. So the salutary effects on the administrative process are exactly the same as those that Rule 23 contemplates in federal court, and a number of federal decisions have found that as well. I think it's also worth underscoring that in the Cherokee certification process itself, the government took the position that those tribes that had already exhausted their administrative remedies should be carved out of the class. The court didn't address that issue, ultimately, because the court decided not to certify the class. But one can presume that what the government was arguing was that the class that was the putative class, or the proposed class, included all of those tribes which had not exhausted administrative remedies. And in this litigation, the government is arguing that because those putative class members did not exhaust their administrative remedies, they could not be members of the putative class. The circular reasoning is not very persuasive. The other factor that I think is important for you to know is that there was in fact a class action. It is still a live class action case today, in which the court found, with respect to contract support class claims against the Bureau of Indian Affairs, that the class plaintiff exhausted administrative presentment requirements for all of the class members, all tribes around the country, and that each individual tribe that had similar claims did not have to administratively exhaust those claims before they were part of the class. Which case is that? The Rama class action. And the court essentially held that it would be a nullity, and it would not make any difference to require all of them to exhaust their administrative remedies. Thank you, sir. The case is submitted.